MERCHANTS NATIONAL BANK *vs.* MARDEN, ORTH AND HASTINGS
COMPANY.

BANK OF SOUTHPORT *vs.* SAME.

CONTINENTAL TRUST COMPANY *vs.* SAME.

PALMETTO GROCERY COMPANY, INCORPORATED, *vs.* SAME.

Suffolk. October 21, 1919. — November 26, 1919.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Contract,* Construction, Rescission. *Evidence,* Relevancy and materiality, Extrinsic affecting writing, Presumptions and burden of proof. *Bills and Notes,* Holder in due course, Purchaser for value. *Fraud. Corporation,* Officers and agents. *Bank.*

At the trial of an action by one alleged to be a holder in due course of a negotiable promissory note against the payee who had indorsed the note in blank and had delivered it to a third person, from whom it had come to the plaintiff, the defendant contended and offered evidence tending to show that the delivery to the third person was not absolute, but was conditional upon the result of an examination by the defendant of the title to real estate of a corporation whose financial condition was a material factor in the transaction relating to the note, that, previous to the performance of the condition, the defendant discovered that he had been induced to execute the note through fraud and misrepresentations as to the financial condition of the corporation and rescinded the transaction, that in the meantime the third person had negotiated the note, and that the plaintiff was not a holder in due course. There was evidence tending to show that the third person, who was the president of a bank to which the corporation was heavily obligated, was told by the treasurer of the corporation "practically everything that came up and we had a hard job to pay." The plaintiff objected to the introduction of testimony of the treasurer and of statements made from the books of the corporation tending to show that the condition of the corporation was much worse than, for the purpose of inducing the defendant to indorse the note, it had been represented to him to be, the objection to the evidence being based solely on the ground that there was no evidence tending to show that the third person ever saw the books or was told what they actually showed or had any knowledge of their contents. *Held,* that the evidence rightly was admitted.

At the trial above described, it appeared that, as a part of the transaction of delivering the note to the third person, the third person gave to the defendant a receipt. The plaintiff contended that the words of the receipt should be binding and that no oral evidence should be admitted which tended to show other conditions relating to the delivery of the note than those stated in the receipt. The receipt did not show that the third person agreed to hold the note in his possession without negotiating it. *Held,* that the receipt should be considered with all the other evidence relating to the transaction, and that the questions,

whether the third person received the note, not to be delivered until the performance of a condition, and whether he had a right to deliver it as he did, were for the jury.

If one, who through fraud came into possession of an unmatured negotiable promissory note indorsed in blank by the payee, fraudulently put it into circulation by delivering it, without notice of the fraud, to a bank, which credited his account with its amount, and the bank, before he drew against the credit so given, received notice of the fraud, the bank has not the rights of a holder in due course in an action by it against the payee who indorsed the note.

One, who through fraud came into possession of an unmatured negotiable promissory note, which was made by a corporation and was indorsed in blank by the payee, was the president of two banks, both of which were creditors of the corporation, and negotiated the note to one of the banks for the purpose of saving it from loss. *Held,* that a finding was warranted that the fraudulent officer acted as agent for the bank which received the note and that that bank therefore was not a holder in due course.

Where, at the trial of an action by one claiming to be a holder in due course of an unmatured negotiable promissory note against an indorser thereon, it appears that the plaintiff gave value for the note, but that it was procured through fraud by one who fraudulently negotiated it to the plaintiff, the burden is on the plaintiff to show that he had no actual notice or knowledge of the fraud. Following *Merchants' National Bank of Lowell* v. *Haverhill Iron Works,* 159 Mass. 158.

In the action above described, it appeared that, upon discovery of the fraud, the payee tendered back to the person who fraudulently had negotiated the note to him all that had been received from him in the transaction and stated that he rescinded the transaction, and that thereafter the holder of the note negotiated it to the plaintiff, receiving in exchange another note. *Held,* that, if the jury found that the plaintiff had notice or knowledge of the fraud as to the note, the defendant was under no obligation to tender to him what he had received through the fraud of the former holder or to relieve such former holder of his obligation to the plaintiff.

FOUR ACTIONS OF CONTRACT upon promissory notes of the Carolina Coast Products Company, a corporation, payable to the defendant corporation, Marden, Orth and Hastings Company, and indorsed by it. The first action is upon one of such notes amounting to $2,500, the second upon two of them for $2,500 and $1,250, respectively, the third upon two of them for $5,000 and $6,500, respectively, and the fourth upon one of them for $2,500. Writs in the first two actions dated December 17, 1915, in the third action dated December 6, 1915, and in the fourth action dated January 21, 1916.

In the Superior Court the actions were referred to and were heard together by an auditor, and, after the filing of the auditor's report, were tried together before *Keating,* J.

There was evidence tending to show that the Carolina Coast Products Company, the maker of the notes which were the foundation of the actions, was organized in 1913 and was engaged in the business of fishing for menhaden and manufacturing them into fish oil and fertilizers. One Greenamyer and one Chadwick had been active in organizing the corporation and in November, 1914, together owned a majority of its capital stock and controlled it and were liable as indorsers upon paper of the corporation amounting to $20,282.50. The corporation owed the defendant a large sum of money by reason of its failure to perform a contract to deliver goods for which the defendant had paid in advance.

Greenamyer and the president of the Carolina Coast Products Company, one Bussels, approached Orth, the president of the defendant, in New York to interest him in purchasing an interest in the corporation. After some negotiations in which some figures as to the financial standing of the corporation were stated to Orth, Orth and his counsel went to Wilmington, North Carolina, further to investigate the proposition. They were met by Greenamyer, Chadwick and Bussels and there were further negotiations, during which Greenamyer gave Orth a financial statement, purporting to show the corporation's condition as of November 1, 1914. This was written on paper of an orange color and consequently was referred to in the testimony and is referred to in the opinion as the "orange statement." Examining it later, Orth found that it differed so much from the statement made to him previously, that he decided not to go further with the negotiations, and so stated. One Cooper, the president of the American National Bank of Wilmington, North Carolina, and also of the plaintiff, Bank of Southport, then was called into the negotiations. The American National Bank held obligations of the Carolina Coast Products Company amounting to $25,000, and the Bank of Southport also held some of its paper.

Through Cooper's intervention, a price for which the defendant should purchase the stock of Greenamyer and Chadwick later was agreed upon. As a part of the negotiations, the defendant was to hold Greenamyer and Chadwick harmless on their indorsements of the corporation paper, Cooper's bank, the American National Bank, was to extend for one year the obligations of the corporation which it held, and the corporation was to execute and

give to the defendant and the defendant was to indorse the notes which form the basis of this action and which were to be used to take up notes of the corporation outstanding and overdue. On November 14, 1914, the notes in question were made out, signed by Bussels as president of the Carolina Coast Products Company and indorsed by Orth for the defendant and were left with Orth. At that time Cooper signed and retained a receipt reading as follows:

"Wilmington, N. C.
Nov. 14, 1914

Messrs. Marden, Orth & Hastings Co., Boston, Mass.

Gentlemen: This will acknowledge receipt of six notes of the Carolina Coast Products Co. aggregating $20,250.00 which we are to retain and in lieu therefor we are to return to you notes carrying the endorsement of the Carolina Coast Products Co. aggregating approximately the same amount, all of which are now past due with the exception of a direct obligation of the Carolina of approximately $6,600.00, which $6,600.00 is in Washington, D.C. All of the past due notes mentioned are held for the account of yourselves to be turned over to you or to be handed to your Attorneys, for your account, without any liability on our part. It is understood that we are to make draft on you for the difference on account of the difference in principal of the notes mentioned and also to send you memorandum of the transaction and to also make draft on you for the interest on the $20,250.00 for the twelve months, the time they are to run.

Yours very truly,
Thos. E. Cooper.

P. S. It is distinctly understood that these past due papers mentioned are to be returned to you free from any Attorney fees that may have been incurred.

Thos. E. Cooper."

In the meantime, Orth's attorney had been examining the title of the Carolina Coast Products Company to its real estate and he and Orth were making weekly trips to Wilmington and Southport. On November 17, he discovered a defect in the title, which, however, could be remedied and, in order to prevent the existence of that defect from delaying the transaction, Greenamyer and Chadwick and Cooper joined in a guaranty of the title. There was evidence,

which was controverted, tending to show that, up to the time of the delivery of this guaranty, nothing was said about the new notes, which were still in Orth's possession, and that he did not contemplate delivering them to Cooper and did not understand that they were to be delivered until the title was perfected. Cooper, however, said that he wanted to have them in his bank as "he had a big indebtedness of the Carolina Coast Products Company and his directors were after him regarding it." Orth's attorney advised Orth not to deliver the notes to Cooper. Orth, however, did deliver them and there was evidence that he did so upon the express understanding that Cooper should keep them in his possession until the title should be perfected. At the same time Cooper handed Orth the receipt, quoted above and dated November 14, 1914. Immediately thereafter Orth and his attorney hurried for the train, Orth stating that they would return in the course of a few days to examine further into the title and that he wanted to go over the books.

They returned the next week and an examination of the books of the Carolina Coast Products Company was made with the assistance of its secretary and treasurer, one Sumner, who also was a member of its board of directors. The results of this examination, as shown from the testimony of Sumner and certain prepared statements, were admitted in evidence subject to exceptions by the plaintiffs, their objection, as stated in their brief, being "based not on the ground that statements made up by Sumner were offered instead of the original books themselves, but on the ground that the figures as shown by the books, if the books had been offered, would not have been admissible, because there was no evidence in the case tending to show that Cooper ever saw the books or was ever told what the books actually showed or had any knowledge of their contents."

In the course of Sumner's testimony occurred the following: "Q. Did you ever tell him [T. E. Cooper] anything about your finances specifically? A. I most certainly did. — Q. What did you ever tell him specifically? A. I told him about practically everything that came up and we had a hard job to pay. — Q. You went to him whenever you wanted money? A. We certainly did."

The examination by Orth with Sumner disclosed that the

financial condition of the corporation was so much worse than was shown by the "orange statement" that Orth at once on November 24, 1914, attempted to rescind the transaction by tendering back to the various parties what they had given in the transaction. It then appeared, however, that Cooper already had delivered the notes in question in the first three suits. He later delivered the note which was the basis of the last action.

It was contended by the plaintiffs that the notes in question were delivered to Cooper absolutely, he binding himself to take up the old notes and send them to the defendant, and that he guaranteed the company's title to its real estate in order to get the notes delivered to him absolutely, thus closing the transaction so far as he was concerned. The defendant on the other hand contended that Orth for the defendant gave the notes to Cooper to hold until Orth's attorney had completed his examination of the title and until he had either found it good or until the defects had been cured, and that Orth took Cooper's guarantee not in lieu of a good record title but to protect his company in respect to advances which it would make immediately to the Carolina Coast Products Company to meet its payrolls and to provide steamboats for the fishing season which had just begun.

Other material evidence is described in the opinion.

At the close of the evidence, the plaintiff asked that certain instructions be given to the jury. Those numbered 9-c, 9-d, 10 and 11 are quoted in the opinion. Others, with the action of the judge therein, were as follows:

"3. The letter of November 14, 1914, from Thomas E. Cooper to the defendant, acknowledging receipt of the notes sued upon, is not to be construed as meaning that Thomas E. Cooper would hold the notes in his possession without negotiating them."

This request was denied.

"7. If you find that Thomas E. Cooper was a purchaser for value, without notice, of the note or notes sued upon, the plaintiff is entitled to recover.

"8. If you find that Thomas E. Cooper was a purchaser for value, without notice, of the note or notes sued upon, any subsequent knowledge or notice that the plaintiff may have had or received is immaterial."

The judge modified both of the instructions numbered 7 and 8

by interpolating after the words, "sued upon," in each, the words "and that he had a right to put the notes out under the agreement made by the parties," and gave them as modified.

"9. The indorsement by the defendant of the note or notes sued upon was a part of the agreement completed on November 17, 1914, between Carolina Coast Products Company, Thomas E. Cooper, David N. Chadwick, Jr., and Charles E. Greenamyer and Marden, Orth & Hastings Company.

"9-a. Part of the consideration for the indorsement of the defendant on the note or notes sued upon was the execution of said notes by the Carolina Coast Products Company, part of such consideration was the agreement of Thomas E. Cooper contained in the letter of November 14th, 1914, part of the consideration was the transfer to it of fifty-one per cent of the stock of the Carolina Coast Products Company by Chadwick and Greenamyer, and part of the consideration was the guarantee of title by Chadwick, Cooper and Greenamyer.

"9-b. The consideration for the defendant's indorsement of the note or notes sued upon was the mutual agreements entered into by Cooper, Greenamyer and the Carolina Coast Products Company, which was consummated on November 17, 1914."

The instructions numbered 9, 9-a and 9-b were refused.

The jury found for the defendant; and the plaintiffs alleged exceptions.

*F. W. Eaton,* for the plaintiffs.

*R. G. Dodge,* (*H. S. Davis* with him,) for the defendant.

BRALEY, J. The promissory notes in suit, which were made by the Carolina Coast Products Company and indorsed by the defendant, although differing in amount are payable either on demand or one year after date and their execution by the maker and the indorser, and due presentment and subsequent protest, are conceded. But the answers severally aver that the defendant's indorsement was obtained "in reliance upon and in consequence of certain representations made . . . with respect to the earnings and liabilities of the Carolina Coast Products Company, and that, after the note had been indorsed, the same was placed in the hands of one Cooper upon the condition that the indorsement should not take effect and that he should retain possession of the said note until the defendant should have verified said representations and should

have ascertained that . . . the company had a good title to certain property which it was alleged to own and until such title should be perfected, and the plaintiff if it received and holds the note declared on had notice at the time of receiving it that . . . Cooper held it upon the aforesaid conditions; thereafter the defendant learned that said representations were false and before said title was perfected demanded that said Cooper return said note, and, if said note was transmitted to the plaintiff by . . . Cooper, it was, as the plaintiff knew, so transmitted wrongfully and in violation of the conditions upon which the same was held by him, and no consideration for the transmission of said note passed between the plaintiff and . . . Cooper, and the plaintiff, at the time it received said note, knew that the defendant had indorsed said note in reliance upon the representations above mentioned and that said representations were false."

The transactions having taken place in the State of North Carolina, the law of which as shown by the statute introduced in evidence appears to be the same in substance and effect as the law of this Commonwealth relating to commercial paper found in R. L. c. 73, the plaintiffs rest their right of recovery on the familiar ground, that, having in good faith before maturity acquired the legal title for a valuable consideration in the usual course of business from one capable of transferring it or in possession of the notes with an apparent right of transference and without notice of any infirmity in the instrument, they are holders in due course. *Smith* v. *Livingston,* 111 Mass. 342. *Massachusetts National Bank* v. *Snow,* 187 Mass. 159. *Fillebrown* v. *Hayward,* 190 Mass. 472, 479, 480. See R. L. c. 73, § 68.

We do not deem it material to refer at length to the dealings between the defendant and the holders of a majority of the capital stock of the company which the defendant, in order to secure control, sought to acquire in connection with and as part of the project to purchase the plant, and to continue the business as a going enterprise. The jury upon conflicting evidence, including the evidence of the company's secretary and treasurer and the statements of liabilities and of notes and bills payable, which were properly admitted, would have been warranted in finding that Cooper knew of the company's financial condition and impending insolvency when he exhibited to one Orth, the defendant's presi-

dent, a paper referred to in the record as the "orange statement" showing the liabilities to be approximately "eleven thousand dollars less." While the "orange statement" used by Cooper is some thirty days subsequent to the tabulations of the treasurer, no evidence was offered by the plaintiff showing any change in conditions, and any question that the evidence was secondary was expressly waived. The receipt or letter also was to be considered by the jury with all the evidence relating to the placing of the notes with Cooper, and the plaintiff's third request, that "The letter of November 14, 1914, from Thomas E. Cooper to the defendant, acknowledging receipt of the notes sued upon, is not to be construed as meaning that Thomas E. Cooper would hold the notes in his possession without negotiating them" could not have been given.

It further could be found on the testimony of Orth that, relying on the accuracy of the "orange statement," he had been induced by Cooper to go on with the proposed trade and to indorse the notes in question, which were to be used to retire outstanding overdue notes of the company indorsed by the sellers of the stock. And, notwithstanding the agreement of indemnity and the receipt or letter given by Cooper to Orth, the jury also were to determine whether, as Cooper testified, there had been an unconditional delivery or whether Orth's evidence was to be followed, that after some imperfections in the title had been discovered by defendant's counsel, he placed the notes in Cooper's hands with the express understanding that he was to retain them until the title had been perfected, which never has been done.

It follows that, if the delivery was conditional Cooper himself could not have enforced payment of the notes. *Watkins* v. *Bowers*, 119 Mass. 383. *Wilson* v. *Powers*, 131 Mass. 539. *Young* v. *Hayes*, 212 Mass. 525, 531. And the plaintiffs' seventh and eighth requests could not have been given in terms but were properly modified by the instructions, while the ninth request, and requests 9-a and 9-b being founded on assumptions of a partial view of the evidence were denied rightly.

The defendant in each case having obtained a verdict under instructions to which no exceptions were saved (*Morrison* v. *Holder*, 214 Mass. 366), the final inquiry is whether requests 9-c and 9-d and 10 and 11 were rightly denied. The requests were

"In no event can the defendant avoid liability on its indorsements on the note or notes sued upon without tendering back to each one of said parties the consideration moving from him, and without putting each one of said parties back *in statu quo.*" "There is no evidence in the case that will warrant you in finding that the defendant ever offered to put all of the parties to the agreement consummated on November 17, 1914, back *in statu quo.*" "The defendant would in no event be entitled to rescind and thus avoid liability on its indorsements, unless it offered to put Thomas E. Cooper back in the same position he was in before the new notes were given to him." "If you find that Thomas E. Cooper, in reliance on the new notes given him by the defendant, returned to Chadwick and Greenamyer collateral of theirs, which he held to secure their indorsements on the old notes, the tender made by the defendant was not sufficient to entitle it to rescind and avoid liability on its indorsement on the notes sued upon."

The jury could find that within ten days after Cooper received the notes, Orth upon examination of the company's books was convinced that he had been materially deceived and defrauded as to the financial condition of the company, and thereupon notified the owners of the stock and Cooper that he would not consummate the trade and tendered the certificates of stock to the sellers and made demand on Cooper for a return of the notes. To this demand Cooper replied that he had parted with the notes, but declined to furnish any information whereby the holders could be ascertained. The jury accordingly could say that the notes had been fraudulently put in circulation.

The Merchants National Bank in the meantime had received the note sued on from Cooper and had given him credit for the amount. But as Cooper had not drawn against the account before the bank, as the jury could find, had received notice from the defendant of the infirmity of the note, it is not a holder for value and cannot recover. *Emerson* v. *Burns,* 114 Mass. 348. *Thompson* v. *Sioux Falls National Bank,* 150 U. S. 231. The Continental Trust Company also, as the jury could find, before it received notice from the defendant of the invalidity of the notes declared on, had not given any value therefor, and for reasons just stated it cannot recover.

The Bank of Southport of which Cooper was president held

overdue paper of the Carolina Coast Products Company for which the note in question was exchanged. The history of the financing of the company by the bank when viewed in connection with the evidence of Cooper's knowledge of the company's financial resources, and of his desire and purpose to protect the bank's interest and save it from loss, coupled with the cashier's evidence, "that he supposed Cooper as president of the bank had authority to exchange the notes," warranted a further finding that Cooper acted for the bank. If he did, it is chargeable with his knowledge and is not a holder in due course. *National Security Bank* v. *Cushman,* 121 Mass. 490. *Loring* v. *Brodie,* 134 Mass. 453. *Merchants' National Bank of Gardiner* v. *Citizens' Gas Light Co.* 159 Mass. 505, 508. *Noble* v. *Joseph Burnett Co.* 208 Mass. 75, 83. The case of *Corcoran* v. *Snow Cattle Co.* 151 Mass. 74, where the president acted in his own interest and not in that of the bank, is clearly distinguishable.

The Palmetto Grocery Company, Incorporated, of which a brother of Cooper was treasurer, and who is described in the evidence as "practically" owning the company and running it holds the remaining note in dispute. The evidence shows that some time in December Cooper sent the note to his brother with a request that he give a check for it. But, upon being informed that this could not be done, Cooper asked for the plaintiff's note for a like amount payable at the same time, which was given about the middle of January, 1915, in which month Cooper's personal account in the American National Bank was credited with the proceeds of the note. And when the plaintiff's own note became due its account at this bank was charged with the amount. It seems plain that the plaintiff gave value for the note, and the judge so instructed the jury, to which instruction the defendant took no exception. *Goodwin* v. *Massachusetts Loan & Trust Co.* 152 Mass. 189, 199. *National Revere Bank* v. *Morse,* 163 Mass. 383. But, even if the note was taken for value and before maturity, the jury, as we have said, could find that it had been fraudulently put in circulation. The burden therefore was on the plaintiff to show that on all the evidence it had no actual notice or knowledge of the fraud. *Fillebrown* v. *Hayward,* 190 Mass. 472, 480. *Merchants' National Bank of Lowell* v. *Haverhill Iron Works,* 159 Mass. 158, 160. If, for the reasons

stated, the plaintiffs could be found not to have been holders in due course, the defendant was not required to tender to either whatever of value it may have parted with in its dealings with Cooper or to relieve Cooper from any obligations he may have incurred to third parties through his own wrongful acts. *O'Shea* v. *Vaughn,* 201 Mass. 412, 423, 424.

The judge properly refused to give the rulings requested, and, finding no error of law, the exceptions in each case must be overruled.

*So ordered.*