AMERICAN BARREL COMPANY *vs.* COMMISSIONER OF BANKS
& others.

Essex.  February 6, 1934. — March 25, 1935.

Present: CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Agency,* What constitutes, Termination.  *Bank and Banking,* Collection
of checks.  *Bills and Notes,* Check.

A bank did not become the owner of a check payable to one of its de-
positors and deposited by him in his account, but became merely an
agent of the depositor for the collection of the check, where, although
the depositor indorsed the check to the order of the bank without
restriction and was credited with the amount thereof on its books, he
made the deposit with notice from the bank that "in receiving items
for deposit or collection" it "acts only as depositor's collecting
agent," that all "items are credit subject to final payment" and that
the bank "may charge back any item at any time before final pay-
ment, whether returned or not," and he was not entitled as of right
to draw against the check before its collection.

An agency of a trust company to collect a check deposited by a depositor
in his account terminated when, before collection, the commissioner
of banks took possession of the trust company.

Where a check, indorsed by the payee and deposited in his account with
a bank, and indorsed by the bank to the order of "any bank, banker
or trust company," was sent to another bank "for collection" under a
course of dealing between the banks whereby checks so sent were im-
mediately credited to the account of the forwarding bank, but, if
such checks were not collected, they were returned to the forward-
ing bank and it was charged with the amount thereof even if its
account with the collecting bank were overdrawn, the forwarding
bank having notice that "items are credited subject to final pay-
ment" and not having the right to draw against such checks until
they should have been collected, the collecting bank did not become
the owner of the check in question, but merely an agent for its collec-
tion, even though the account of the forwarding bank with the col-
lecting bank was overdrawn at the time when such check was so sent.

An agency of a national bank to collect a check sent to it for that purpose
by another bank in which the check had been deposited by the payee
terminated when, before collection, the national bank ceased doing
business and was placed in the hands of a receiver.

Even if a check, deposited by the payee in a bank which was the payee's
agent to collect it and not the owner of it, was sent for collection to
another bank with such indorsements on it and in such circumstances
that the collecting bank was entitled to treat the forwarding bank as the

owner capable of passing title to a purchaser for value without notice and that, as between the banks, the collecting bank had a lien on the check entitling it to apply the check to a general balance of the banks' accounts favorable to it, nevertheless, the payee of the check, its real owner, after the forwarding bank had closed its doors and payment of the check had been stopped, was entitled to the check as against the collecting bank where, in the usual course of business between the banks, the collecting bank did not suffer balances in its favor against the forwarding bank, nor grant it credit, on the expectation that such indebtedness would be met by the checks sent by the forwarding bank for collection, and credit given by the collecting bank for such checks was merely temporary and conditional upon their being paid, uncollected checks being charged back to the forwarding bank.

BILL IN EQUITY, filed in the Superior Court on April 5, 1932, and afterwards amended.

The suit was heard by *Whiting*, J. The pleadings, material evidence and findings by the judge, and a final decree entered by his order are described in the opinion. The defendant Pearson, receiver, appealed. The evidence was reported.

*J. C. Coughlin*, (*W. M. Marvel* with him,) for the defendant receiver.

*A. R. Pitcoff*, (*R. E. Blake* with him,) for the plaintiff.

FIELD, J. This suit in equity was brought in the Superior Court by the plaintiff, the payee of certain checks, against the commissioner of banks in possession of the property and business of the Salem Trust Company, the Federal National Bank of Boston, in the hands of Herbert Pearson, receiver, and the drawers of such checks to enjoin the defendant Federal National Bank of Boston from bringing suit thereon, and the drawers from making payments thereon to the defendant bank or its receiver, and to order said defendant bank to deliver these checks to the plaintiff. By amendment the receiver was joined as a party defendant. He filed an answer and a counterclaim wherein he prayed that the amounts due from the plaintiff as indorser of said checks and from the defendant drawers thereof be determined, and that the plaintiff and these defendants be ordered to pay such amounts to him as receiver. The judge who heard the case made findings of fact and an order for a

decree. In accordance with such order a decree was entered dismissing the counterclaim of the defendant receiver, ordering him as such receiver to return to the plaintiff all the checks described in the bill of complaint and remaining unpaid, and enjoining the drawers thereof from making payments thereon to said receiver, and the defendant receiver appealed. The evidence is reported.

Material findings of fact, supported by the evidence, are as follows: Both the Salem Trust Company and the Federal National Bank of Boston ceased to do business on December 14, 1931. The former was taken over by the commissioner of banks and the latter by the comptroller of the treasury. Neither has reopened. Each is now in the process of liquidation.

The plaintiff deposited the checks here in question — which were not drawn on Salem banks — with the Salem Trust Company, some of them on December 12, 1931, and others on December 14, 1931. "Each of these checks was endorsed by a rubber stamp, 'Pay to the order of The Salem Trust Co. American Barrel Co.' The deposit slips contained no printing relating to the terms on which the deposits were made but the pass book in the name of the American Barrel Co., in which the deposits were entered, contained the following notice, — 'In receiving items for deposit or collection this bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credit subject to final payment in Cash or Solvent Credits. This Bank will not be liable for default or negligence of its duly selected correspondents nor for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. This Bank or its correspondents may send items directly or indirectly, to any Bank including the payor, and accept its draft or Credit as conditional payment in lieu of Cash; it may charge back any item at any time before final payment, whether returned or not, also any item drawn on this Bank not good at close of business on day deposited.' The Salem Trust Company on the date each deposit was received posted the amount of the checks on its books to

the credit of the American Barrel Company." The plaintiff's credit balance at the close of business on December 12, 1931, and on December 14, 1931, was each day greater than the amount of the checks deposited by it on that day.

The Salem Trust Company caused each check to be indorsed with a rubber stamp as follows: "Pay to the Order of Any Bank, Banker or Trust Co. . . . Salem Trust Co . . . ." "It then sent the checks in the December 12th deposit, not drawn on a local bank, with other checks to the Federal National Bank of Boston by mail and the checks in the deposit of December 14th, not drawn on a local bank, with other checks to the Federal National Bank of Boston by messenger. Each set of checks reached that bank on Monday, December 14th, while that bank was doing business." Accompanying each set of deposits was a writing containing the statement "For collection items listed below" and a list of the checks included. "Neither the Salem Trust Company nor the Federal National Bank of Boston were members of the Boston Clearing House Association. Under an arrangement entered into between the Salem Trust Company and the Federal National Bank of Boston all checks received by the Salem Trust Company, not drawn on Salem Banks, were sent to the Federal National Bank of Boston for collection. The Federal National Bank of Boston by arrangement with the Federal Reserve Bank of Boston cleared all checks deposited with it and those received from the Salem Trust Company through the Federal Reserve Bank of Boston. Daily settlements were made between the Federal National Bank of Boston and the Federal Reserve Bank of Boston of amounts due by reason of clearing of the checks of the Salem Trust Company and that amount was charged or credited to the Salem Trust Company as the case might be. The checks from the plaintiff, together with other checks when received from the Salem Trust Company, were sent to the Federal Reserve Bank of Boston for clearing." At "the time each bank stopped doing business . . . the Salem Trust Company owed the Federal National Bank of Boston more than the total amount of the checks here in question." The plain-

tiff on receiving notice of the closing of the Salem Trust Company asked the drawers of the checks to stop payment thereon and payment was stopped on most of them and such checks were returned to the receiver of the Federal National Bank of Boston. (No question is raised with regard to the checks which were paid.) The "unpaid checks were duly protested for nonpayment and the indorsers notified." They were returned to the defendant receiver and have since remained in his possession. He has refused to return them to the plaintiff and has threatened suit against the plaintiff, as indorser, for the amount of the checks and protest fees.

There was evidence, but no specific findings, that the bank statements sent by the collecting bank to the forwarding bank contained the statement "All items are credited subject to final payment." and that, according to the course of dealing between the forwarding bank and the collecting bank, checks sent by the former to the latter were immediately credited to the account of the forwarding bank, but if for any reason they were not collected they were returned to the forwarding bank and that bank charged with the amount thereof even if its account were overdrawn.

The judge ruled (or found) "that under the circumstances here disclosed the Salem Trust Company was never the owner of the checks in question but was the agent of the plaintiff to collect the checks . . . that the Federal National Bank of Boston did not become owner of the checks in question but also acted as an agent to collect. . . . that the agency of the Federal National Bank of Boston to collect these checks terminated with the appointment of the receiver; [and] that thereafter it had no authority to collect or hold the checks."

The decree was right.

The forwarding bank was an agent of the plaintiff for the collection of these checks and not the owner thereof. This appears from the notice in the plaintiff's pass book that checks were deposited by the plaintiff with the forwarding bank as such an agent even though the plaintiff's indorsements were not restrictive (G. L. [Ter. Ed.] c. 107,

§ 59) and credit was given to the plaintiff by the forwarding bank for the amount of the checks deposited. The provisions of this notice expressly limiting the relation of the forwarding bank to the plaintiff to that of an agent for collection go beyond provisions, also in the notice, that credits are "subject to final payment" and reserving the right to charge back the items — whatever would be the effect of these provisions in themselves. Compare *Douglas v. Federal Reserve Bank of Dallas*, 271 U. S. 489, 493; *Boston-Continental National Bank* v. *Hub Fruit Co.* 285 Mass. 187, 189–191. The latter provisions at least are not incompatible with the agency relation. Furthermore, there is nothing to indicate either that the plaintiff could as of right draw against the checks deposited or that in fact it did draw against them. *Salem Elevator Works, Inc.* v. *Commissioner of Banks*, 252 Mass. 366, 370–371, and cases cited. *Boston-Continental National Bank* v. *Hub Fruit Co.* 285 Mass. 187, 189–191. The checks had not been collected when the commissioner of banks took possession of the property and business of the forwarding bank, and when he did so the forwarding bank's agency for collection came to an end. *Salem Elevator Works, Inc.* v. *Commissioner of Banks*, 252 Mass. 366, 371–372.

Nor was the collecting bank the owner of the checks. The arrangement between the forwarding bank and the collecting bank was in terms an arrangement that checks should be sent by the former to the latter "for collection." And the checks here in question were sent for that purpose, as appears from the letter of transmittal. The notice from the collecting bank to the forwarding bank contained in the bank statements, that items are credited "subject to final payment," and the course of dealing between the banks whereby checks deposited by the forwarding bank with the collecting bank were credited by it to the forwarding bank but unpaid checks returned to the collecting bank were immediately charged to the forwarding bank is at least compatible with the existence between the banks of an agency relation. The principles already stated in regard to the relation between the plaintiff and the forwarding

bank are applicable to the relation between the forwarding bank and the collecting bank. And it cannot be said that the forwarding bank could as of right draw against checks deposited but not collected. See *Salem Elevator Works, Inc.* v. *Commissioner of Banks,* 252 Mass. 366, 370–371. *Shawmut National Bank* v. *Manson,* 168 Mass. 425, relied on by the receiver, is distinguishable since in that case there was no special agreement that the check was deposited for the limited purpose of collecting the proceeds thereof. See also *Wood* v. *Boylston National Bank,* 129 Mass. 358. Furthermore the collecting bank did not become the owner of the checks deposited by reason of the overdrafts by the forwarding bank, existing when the deposits were made. Doubtless such overdrafts, being antecedent debts, would supply the "value" essential to make the collecting bank a holder in due course if these checks, uncollected, had been taken in payment of such antecedent debts. G. L. (Ter. Ed.) c. 107, §§ 48, 75. *Russell* v. *Bond & Goodwin Inc.* 276 Mass. 458. But by the terms of the special agreement governing the deposit of such·checks they were not so taken by the collecting bank but were taken for purposes of collection. And the existence of such overdrafts did not change the nature of the transaction. *Boston-Continental National Bank* v. *Hub Fruit Co.* 285 Mass. 187, 191. The collecting bank continued to be merely an agent for the collection of the checks — that is, an agent of the plaintiff as undisclosed principal, *Skopetz* v. *American Express Co.* 251 Mass. 136, 140, and cases cited — until such agency came to an end when the bank ceased to do business. *Manufacturers' National Bank* v. *Continental Bank,* 148 Mass. 553, 559.

It does not appear, however, that the collecting bank had notice of the terms of the deposits of the checks with the forwarding bank. Consequently, since the indorsements of these checks by the plaintiff were not restrictive and the checks had all the appearance of title in the forwarding bank, the collecting bank was entitled to treat the forwarding bank as the owner of the checks capable of passing title to the checks to a purchaser for value without

notice. *Wood* v. *Boylston National Bank,* 129 Mass. 358. See also *First National Bank of Minneapolis* v. *City National Bank of Holyoke,* 182 Mass. 130, 134–135. *Freeman's National Bank* v. *National Tube Works Co.* 151 Mass. 413, relied on by the plaintiff, is distinguishable.

It is not necessary to decide whether as between the forwarding bank and the collecting bank the latter had a so called "banker's lien" on the uncollected checks sent to the latter for collection whereby it was entitled to apply them or their proceeds to its general balance of account with the forwarding bank. See *Furber* v. *Dane,* 203 Mass. 108, 117. For even if the collecting bank had such a right as against the forwarding bank, the former through its receiver cannot prevail in this suit unless its right to the checks is superior to the right of the plaintiff, the real owner thereof. The collecting bank has no such superior right, even though it had no notice that the forwarding bank was not the real owner of the checks, unless it gave credit to the forwarding bank or suffered balances to remain in its hands to be met by checks transmitted, or expected to be transmitted, by the forwarding bank to the collecting bank in the usual course of business between the banks. *Bank of Metropolis* v. *New England Bank,* 1 How. 234; S. C. 6 How. 212. *Sweeny* v. *Easter,* 1 Wall. 166. But, by reason of the special agreement between the banks, credit given to the forwarding bank and balances suffered to remain in its hands were not to be met by uncollected checks transmitted, or expected to be transmitted, in the usual course of business to the collecting bank. Such checks were taken only provisionally and credits therefor on the books of the collecting bank were purely temporary and conditional. The forwarding bank could not as of right draw against them. The right of the collecting bank to charge back uncollected items was not merely a method of exacting payment from the forwarding bank as indorser. Compare *Douglas* v. *Federal Reserve Bank of Dallas,* 271 U. S. 489, 493. It was an incident of the temporary and conditional nature of the credits. The forwarding bank's overdraft, so far as appears, was not suffered on the faith

of checks transmitted, or to be transmitted, on such terms, so long as the checks remained uncollected. The receiver of the collecting bank, therefore, has no right to the uncollected checks superior to that of the plaintiff, the real owner thereof. See *Boston-Continental National Bank* v. *Hub Fruit Co.* 285 Mass. 187.

*Decree affirmed.*