**AGRICULTURAL INSURANCE COMPANY OF WATERTOWN, NEW YORK, et al.**

v.

**Manuel ANDRADE and Fall River Trust Company.**

Civ. A. 55-783.

United States District Court
D. Massachusetts.

Dec. 14, 1956.

894

Charles W. O'Brien, Brickley, Sears & Cole, Boston, Mass., for plaintiff.

Frank M. Silvia, Jr., Fall River, Mass., for defendant Fall River Trust Co.

Anthony Julian, U. S. Atty., Andrew A. Caffrey, Asst. U. S. Atty., Boston, Mass., for intervener The United States.

ALDRICH, District Judge.

This is an action of interpleader in which the fund ($4,000) has been paid into court. The complainant, Agricultural Insurance Company of Watertown, New York, hereinafter called Agricultural, is a New York corporation. The defendant Andrade is a citizen of Massachusetts. The defendant Fall River Trust Company, hereinafter called the Bank, is a Massachusetts corporation. The third named defendant was the United States. There was no jurisdictional basis to make the government a defendant, and it was dismissed. Subsequently, however, it intervened as a party plaintiff, and made claim to the fund.

In July, 1952 the government acquired a tax lien, in an amount in excess of $4,-000, against Andrade pursuant to sections 3670, 3671 and 3672 of the Internal Revenue Code of 1939, identical in all material respects with 26 U.S.C.A. (I.R.C. 1954) §§ 6321, 6322 and 6323. In December, 1952, notices of this lien were filed with the Fall River City Clerk and Registry of Deeds. In December, 1953 Andrade and Agricultural agreed upon $4,000 as the amount due Andrade in settlement of a claim. On January 25, 1954 one Parker, Agricultural's Massachusetts representative duly authorized, prepared a draft to the order of Andrade in the amount of $4,000. The draft, in form, was essentially identical with that reproduced with the opinion in the case of Jerome v. Eastern Finance Corp., 317 Mass. 364, at page 366, 58 N.E.2d 122. The only difference in form was that whereas the Jerome draft bore at its left-hand end the words,

"Accepted Colonial Fire. . . . Insurance Company

For Loss Department."

the present instrument read along its left-hand end,

"Loss Draft

For the Company"

It differed in substance, however, in that Parker signed the paper, filling the blank over the printed words "For The Company." Parker sent the draft to one Perron, Agricultural's claims representative or agent in Fall River, authorizing him to sign at the lower right-hand corner and deliver the draft to Andrade, which he did. On January 29, 1954, Andrade "deposited" the draft[1] at the Bank. It was later dishonored.

Pausing here, I hold that the instrument was negotiable at the time it was delivered to the Bank. The government says it was not, because it was in-

1. Strictly, being drawn on the drawer, it was more in the nature of note than a draft. Mass.G.L.(Ter.Ed.) Ch. 107, § 153, § 130 of the N. I. L. This was not
changed by the fact that it was to be "paid through" a certain bank, since the called-for acceptance was to be by the drawer, not the bank.

complete, or conditional, on its face—to wit, to be valid only "upon acceptance," citing Berenson v. London & Lancashire Fire Ins. Co., 201 Mass. 172, 87 N.E. 687, and Jerome v. Eastern Finance Corp., supra. I do not agree. I find that the signature of Parker appeared on its face to be, and was, the countersignature, or the "acceptance" called for by the printed language of the form.[2]

The government also claims that the draft was not an unconditional promise to pay because it bore a "release" endorsement on its back. This contention, too, is unsound. Before Andrade delivered the draft to the Bank he executed the release endorsement, in the manner called for. This effectively removed and discharged the condition from the instrument.

 The government's lien attaches to a liquidated indebtedness. Under § 3672(b) (1, 2), however, the Bank would have a right to recover on a negotiable instrument paramount to the government's lien if it was a holder in due course. This requires the Bank to show that it became a holder for value without notice. It had no actual notice. The statute expressly provides that recording of the lien is not such notice. For some reason the government does not argue that the Bank was not a holder in due course if the instrument was negotiable, but makes some contentions that holding in due course would make no difference, which I do not understand. However, the Bank has failed to satisfy me that it became a holder. If the draft was received for collection, only, the Bank would be regarded as an agent of the payee, and not a holder. This is so even though it permitted the payee, as a customer, to draw against the paper prior to collection. Boston-Continental

National Bank v. Hub Fruit Co., 285 Mass. 187, 189 N.E. 89; Grower's Marketing Service, Inc., v. Webster & Atlas National Bank, 318 Mass. 496, 62 N.E. 2d 225; Kirstein Leather Co. v. Deitrick, 1 Cir., 86 F.2d 793. The general relation of Andrade and the Bank was a matter of contract, the material portion of which was as follows:

"Items received for deposit or collection are accepted on the following terms and conditions. This Bank acts only as depositor's collecting agent and assumes no responsibility beyond its exercise of due care. All items are credited subject to final payment and to receipt of proceeds of final payment in cash or solvent credits by this Bank at its own office."

The deposit slip in this particular instance bore the same legend. It was true that the Bank had a "practice to allow well known Fall River residents who were also customers to draw against an insurance draft deposited by said well known customer if an Assistant Treasurer approved the request to do so by said customer," and that such request was made in the instant case, and so approved, and that the Bank forthwith permitted withdrawals from Andrade's account against such a credit. This credit was predicated on the Bank's opinion of the payee "as a well known resident * * * [and] customer." It did not constitute a purchase of the instrument, or vary the written agreement that the credit was "subject to final payment" and that the Bank was a collecting agent only. I find that the Bank was not a holder. Accordingly, it cannot claim as against the government's lien.

Judgment for the United States. No costs to any party.

---

2. There was no other space for acceptance. The government confuses the perhaps more usual situation for which this form was prepared, viz., where a claim is tentatively "settled" with the insured by the claims representative (e. g., Perron), who alone signs the draft and delivers it to the insured, who "deposits" it. The Bank forwards the draft for collection, and if the insurance company approves the settlement it ratifies the claim agent's action by acceptance. Until then the instrument was conditional, or incomplete. But here the process was reversed—the company signed the acceptance before delivery. There was no necessary priority. Mass.G.L. Ch. 107, § 161.