UNIVERSAL C.I.T. CREDIT
CORPORATION
v.
GUARANTY BANK AND TRUST COM-
PANY (Worcester County Trust
Company).
Civ. A. 57-601.

United States District Court
D. Massachusetts.
May 2, 1958.

Matthew Brown, Brown, Rudnick & Freed, Boston, Mass., for plaintiff.

Kevin Hern, Milton, Mass., Herrick, Smith, Donald, Farley & Ketchum, for defendant Guaranty Bank and Trust Co., Boston, Mass.

George H. Mason, Vaughan, Esty, Crotty & Mason, Worcester, Mass., for defendant Worcestor County Trust Co.

WYZANSKI, District Judge.

■ This case, falling within this Court's diversity jurisdiction, arises under that version of the Negotiable Instruments Law now embodied in Mass.

G.L.(Ter.Ed.), c. 107. The only problem of any difficulty is whether under Massachusetts law as it now stands, that is, before the effective date of what is commonly called the Commercial Code, adopted by c. 765 of the Massachusetts Acts of 1957 effective October 1, 1958, when a bank receives from its depositor a check endorsed without restriction but deposited pursuant to the usual deposit slip wherein the bank agrees merely to act as a collection agent, but nonetheless, the bank, before collecting the check allows the depositor to draw from the bank an amount equivalent to both his entire balance and the amount of that uncollected check, the bank is a holder for value of that uncollected check.

An abbreviated statement of the facts will suffice in view of what this Court concludes are the governing principles of law.

C. I. T. (more fully described as Universal C. I. T. Credit Corporation, a New York corporation, plaintiff herein) had an account with Guaranty (more fully described as Guaranty Bank and Trust Company, a Massachusetts corporation, defendant and third-party plaintiff herein). McCarthy (more fully described as McCarthy Motor Sales, Inc., a Massachusetts corporation, not a party to this case) had an account with Worcester (more fully described as Worcester County Trust Company, a Massachusetts corporation, third-party defendant.)

On October 1, 1955 C. I. T. drew on Guaranty payable to the order of McCarthy two checks (hereinafter called A and B) in the amounts respectively of $10,886 and $880 (or a total of $11,766). The same day McCarthy deposited in Worcester these checks endorsed without restriction but accompanied by and in accordance with the usual bank deposit slip reciting that the item was received by the bank for collection only. At 9:10 a. m. October 2, 1956 C. I. T.'s representative presented to Guaranty a written stop-payment order covering checks A and B. Nonetheless, at the clearing later that same day when Worcester presented to Guaranty checks A and B for payment, Guaranty gave Worcester a final credit for the $11,766 stated therein. Later Guaranty asked Worcester to take back checks A and B, but Worchester refused. Guaranty debited C. I. T.'s account for $11,766. C. I. T. claims that this was an unauthorized debit.

On October 1, 1956 McCarthy's balance at Worcester was $18.22. After McCarthy on October 1, 1956 had deposited checks A and B, before Guaranty sought to return to Worcester checks A and B, and before Worcester had any reason to know that checks A and B would be subject to any difficulties, Worcester during business hours on October 2, 1956 paid or settled at the clearing a check drawn on September 24, 1956 by McCarthy on Worcester payable to C. I. T. in the amount of $11,297.04 (hereinafter called check X) together with other checks which in combination exhausted both McCarthy's October 1 cash balance of $18.22 and the provisional credit of $11,766, attributable to checks A and B.

■■ Upon the foregoing facts, the the initial question relates to the effect of C. I. T.'s order to Guaranty to stop payment upon checks A and B. C. I. T., as the drawer of the checks, had an absolute right to order payment stopped; Guaranty, the drawee bank making payment thereon, acted at its peril. Since a check is merely an order to a bank to make payment in the manner set forth, the customer has the right to revoke such order before it is carried out. That was the rule of the common law. Florence Mining Co. v. Brown, 124 U.S. 385, 8 S.Ct. 531, 31 L.Ed. 424. See Moore, Sussman and Brand, Legal and Institutional Methods Applied To Orders To Stop Payment of Checks, 42 Yale L.J. 817, 1199. It is the present rule under the Massachusetts version of the N. I. L. Universal Supply Co. v. Hildreth, 287 Mass. 538, 540, 192 N.E. 23, 94 A.L.R. 1389; Tremont Trust Co. v. Burack, 235 Mass. 398, 401, 126 N.E. 782, 9 A.L.R. 1067. Brannan, Negotiable Instruments (7th ed.) p. 1316. Ogden, Negotiable Instruments (5th ed.) p. 527. Cf. Mass.

G.L.(Ter.Ed.) c. 107, § 212. It will be the law when the Commercial Code becomes effective in Massachusetts. Mass. G.L.(Ter.Ed.) c. 106, § 4–403. Am. Law Inst., Bank Deposits and Collections, by J. J. Clarke and R. J. Bailey III, (1955) p. 121. And reference to this code is appropriate because the Massachusetts court regards it less as a novel enactment than as largely a restatement and clarification of existing law which has the approval of American scholars. Budget Plan, Inc., v. Savoy, Mass., 145 N.E.2d 710.

But although under the principles just stated C. I. T. has established against Guaranty a claim arising out of the unauthorized debiting by Guaranty of C. I. T.'s account in the amount of $11,766, the next issues are whether Worcester was a holder in due course of checks A and B amounting to $11,766, and whether, to avoid circuity of action, Guaranty is subrogated to Worcester's claim against C. I. T.

Unquestionably under presently effective Massachusetts law, Worcester did not become a holder for value of checks A and B merely by taking those checks for collection only, even if simultaneously Worcester gave McCarthy a provisional credit based thereon. Merchants' Nat. Bk. v. Marden, Orth, etc., Co., 234 Mass. 161, 125 N.E. 384; Brannan, Negotiable Instruments (7th ed.) p. 498. Cf. Mass. G.L.(Ter.Ed.) c. 107, § 48.

But Worcester went further than to enter a provisional credit. Worcester, though it was not required so to do, allowed McCarthy to draw to the full amount of the credit before it had been collected. As is noted in 20 Columbia Law Review 351, there are at least three possible constructions of this action. "In the absence of any express intention between the parties, some courts view such a transaction as a loan on the personal credit [of the depositor] and allowed as a convenience * * *. Other cases maintain that an advance by the bank against an uncollected deposited check terminates the principal-agent relationship and becomes an act of purchase of

the check * * * And still others while not giving the bank title indicate that a lien is created in its favor for any debt due it from the depositor by virtue of such advances."

That Massachusetts would follow the third of these choices is indicated by a case that preceded the adoption of the N. I. L. Shawmut National Bank v. Manson, 168 Mass. 425, 47 N.E. 196. The N. I. L. was not designed to alter that rule. For, as stated in Mass.G.L.(Ter.Ed.) c. 107, § 50, it provides that "where the holder has a lien on the instrument, arising either from contract or by operation of law, he is deemed a holder for value to the extent of his lien." Cf. Mass.G.L. (Ter.Ed.) c. 107, § 18 definition of "value" and § 82.

Indeed, the majority of courts have ruled, pursuant either to the N. I. L. or to the common law, that a bank in Worcester's position is a holder in due course to the extent of its advances. Pearson v. Brennan, 1 Cir., 75 F.2d 958 (a decision antedating Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188); Deitrick v. McCarthy, D.C.Mass., 13 F. Supp. 850 (also antedating Erie R. Co. v. Tompkins); Bath Nat. Bk. v. Ely N. Sonnenstrahl, Inc., 249 N.Y. 391, 393– 394, lines 6–10, 164 N.E. 327–328 (per Lehman, J.); Old Nat. Bk. v. Gibson, 105 Wash. 578, 179 P. 117, 6 A.L.R. 247; First Trust & Savings Bank of Zanesville v. Fidelity-Philadelphia Trust Co., 3 Cir., 214 F.2d 320, 323, 50 A.L.R.2d 1218; and other cases collected in National Bank of Commerce v. Morgan, 207 Ala. 65, 92 So. 10, 24 A.L.R. 901; 60 A.L.R. 247; 80 A.L.R. 1064; 99 A.L.R. 486, 498; Dean Tobacco Warehouse Co. v. American Nat. Bank, 173 Tenn. 365, 117 S.W. 2d 746, 118 A.L.R. 363; 22 A.L.R.2d 478. The commentators have approved these rulings. See 20 Col.L.Rev. 351, 17 Mich.L.Rev. 703, 72 U. of Pa.L.Rev. 61, 66–67; Brannan, Negotiable Instruments (7th ed.) pp. 503–508; Ogden, Negotiable Instruments (5th ed.) p. 527; 8 Am. Jur. Bills and Notes, § 442, pp. 191–194. So have the draftsmen of the (as yet inoperable in Massachusetts) provisions of

the Commercial Code. § 4–208(a) thereof will provide:

"§ 4–208. Security Interest of Collecting Bank in Items, Accompanying Documents and Proceeds.

"(1) A bank has a security interest in an item and any accompanying documents or the proceeds of either

"(a) in case of an item deposited in an account to the extent to which credit given for the item has been withdrawn or applied;"

The comment on that subsection states:

"1. Subsection (1) states a rational rule for the interest of a bank in an item. The customer of the depositary bank is normally the owner of the item and the several collecting banks are his agents (Section 4–201). A collecting agent may properly make advances on the security of paper held by him for collection, and when he does acquires at common law a possessory lien, for his advances. Subsection (1) applies an analogous principle to a bank in the collection chain which extends credit on items in the course of collection. The bank has a security interest to the extent stated in this section. To the extent of its security interest it is a holder for value (Sections 3–303, 4–209) and a holder in due course if it satisfies the other requirements for that status. (Section 3–302.) Subsection (1) does not derogate from the banker's general common-law lien or right of set-off against indebtedness owing in deposit accounts. See Section 1–103. Rather subsection (1) specifically implements and extends the principle as a part of the bank collection process."

And § 4–209 will provide:

"§ 4–209. When Bank gives Value for Purposes of Holder in Due Course.

"For purposes of determining its status as a holder in due course, the bank has given value to the extent that it has a security interest in an item provided that the bank otherwise complies with the requirements of section 3–302 on what constitutes a holder in due course. (1957, 765, § 1; effective Oct. 1, 1958.)"

█ Authority apart, there is fairness in this majority rule to the effect that there is a presumption that where a bank advances credit to a customer on his drawings after that customer has deposited with the bank for collection a check endorsed unrestrictively both parties intend that the bank may look to the collection item for security up to the amount of the bank's advances. In this country it is unusual for a bank to allow a customer to draw except against funds theretofore deposited or upon a formally established credit. Where the bank allows a customer to draw against an uncollected item, particularly in the face of a contract recognizing that the depositor has no right to demand such a privilege, both parties would ordinarily view this allowance not as an unsecured loan upon the customer's general credit but as a bank loan buttressed by the security of the uncollected item. This view is strengthened when, as in the case at bar, the bank's allowance to the customer is within the financial limits of the face amount of the uncollected item. In short, barring some clear agreement by both parties that the bank will not claim any such security rights, when the bank gives the customer the exceptional privilege of of drawing against an uncollected item, a privilege to which under his contract the depositor has no right, the bank, while not purchasing the item is entitled to security to the extent of its advances, and is to that extent a holder in due course—that is, a person who has given value.

The only obstacles to a conclusion that Worcester was a holder in due course to the amount of its advances (which in the case at bar precisely equalled the total of checks A and B) are the relatively recent decision in Agricultural Insurance Co. v. Andrade, D.C.Mass., 146 F.Supp. 893, and the decisions in Boston

Continental National Bank v. Hub Fruit Co., 285 Mass. 187, 189 N.E. 89; Grower's Marketing Service v. Webster & Atlas Nat. Bk., 318 Mass. 496, 62 N.E.2d 225, and Kirstein Leather Co. v. Dietrick, 1 Cir., 86 F.2d 793 on which it purports to be bottomed.

There is no difficulty in distinguishing the last two of these cited cases. In each of them, as in American Barrel Co. v. Commissioner of Banks, 290 Mass. 174, 179, lines 14–15, 195 N.E. 335, the depositor had not drawn against the uncollected funds and so the original depositary bank had not given value and so was not a holder in due course on account of funds advanced.

However, in the Boston Continental National Bank the depositor had drawn against an uncollected item. But as a fact in that particular case the trial judge had found that the depositary bank had nonetheless not given value for that item. The trial judge regarded as significant the fact that the depositor had endorsed the check "for deposit only to the credit of" the depositor and the further fact that the deposit slip stated in the usual form that the bank took the item for collection only and for provisional credit. He evidently regarded those facts as constituting a contract between the depositor and the bank to the effect that the bank neither bought the item nor took it as security for future advances. The Supreme Judicial Court merely held that such a finding was permissible (285 Mass. at pages 189–191, 189 N.E. 89). Perhaps Justice Donahue's opinion is explicable on the narrow ground that the depositor had endorsed the item "for collection only", and that a trial judge could find that in taking such an item the bank agreed not to become a holder in due course. If that be the ground, it does not apply to this case or to the Agricultural Insurance Co., case. And, in any event, that ground was doubtful under the existing Massachusetts law. It certainly does not state what will be the law in Massachusetts when the Commercial Code becomes effective. See § 4–201(1). The second sentence of that subdivision recognizes that "any rights of the [depositor as] owner to proceeds of the item are subject to rights of the collecting bank such as those resulting from outstanding advances on the item." See also § 4–208(1)(a) and § 4–209, quoted earlier in this opinion.

In Agricultural Insurance Co. v. Andrade Judge Aldrich found as a fact in that particular case. that the depositary bank had allowed the depositor to draw on an uncollected item on the basis that he was "a well known resident * * * customer". But, from the learned judge's own statement it appears that the depositary bank also relied on the item it took as an agent for collection. Thus it would appear that the court should have held that the bank gave value for the item, was a holder in due course, and held a valid interest to the extent of the advances or drawings allowed. Insofar as that Court reached a different result this Court declines to follow the ruling in the Agricultural Insurance Co. case. [146 F.Supp. 895.]

This Court having concluded that under Massachusetts law, as indeed under the law in most other states, under the N. I. L., and under the Commercial Code, Worcester was a holder in due course for the amount of its advances, which were in fact the same as the amount of checks A and B, it follows that Guaranty, (in responding to C. I. T.'s claim that Guaranty could not properly have debited C. I. T.'s account for checks A and B which were covered by C. I. T.'s timely order to stop payment,) is subrogated to Worcester's rights against C. I. T. on checks A and B. Cf. Usher v. A. S. Tucker Co., 217 Mass. 441, 443, 105 N.E. 360, L.R.A.1916F, 826. [Compare § 4–407 of the Commercial Code adopted by c. 765 of the Massachusetts Acts of 1957, effective October 1, 1958.] It is usually said that to avoid circuity of action, C. I. T. is not allowed to recover from Guaranty. But perhaps, (see comment to Commercial Code § 4–407,) a sounder way of stating the matter is that C. I. T. is not allowed to recover because it has

not borne its burden of showing that it suffered loss from Guaranty's disregard of the stop payment order; C. I. T. suffered no loss because it would have been liable to Worcester as a holder in due course in any event. Whichever form of statement is used, judgment must enter for defendant Guaranty in the action brought against it by C. I. T. Guaranty having prevailed against C. I. T., Guaranty's third-party action against Worcester is without foundation, and in that third-party action judgment must enter for Worcester.