350 Mass. 354 (1966)
214 N.E.2d 893
THOMAS C. LAWRENCE & another
vs.
BOARD OF SELECTMEN OF EGREMONT & others.
Supreme Judicial Court of Massachusetts, Berkshire.
November 5, 1965.
March 7, 1966.
Present: SPALDING, WHITTEMORE, KIRK, SPIEGEL, & REARDON, JJ.
Sidney Q. Curtiss, Town Counsel, for the defendants.
No argument or brief for the plaintiffs.
*355 REARDON, J.
The plaintiffs brought this bill to enjoin the selectmen and the cemetery commissioners of the town of Egremont from further trespass on land in the town, title to which is in dispute. A Superior Court judge entered an interlocutory decree confirming a master's report which found the plaintiffs to be owners in fee of the locus, and a final decree ordering the defendants to refrain from any further acts of trespass and to restore the premises to the condition in which they were prior to such trespasses already committed. Damages were awarded the plaintiffs in the sum of $1,000. The case is here on the defendants' appeal from both decrees.
The locus comprises approximately four and a half acres of land in Egremont (the town), and is adjacent to a half acre cemetery which has been in use since before 1800 and which is fenced off from the locus. It is claimed that title to the locus is in the town. The master found in part as follows.
In 1757, the proprietors of Egremont, which was not then incorporated as a town or district, voted in two meetings to set aside about five acres of land for a "Meeting house Spot," and in 1758 they empowered a committee to lay out all "burial places." The precise location of these lands and whether the votes were ever carried out does not appear from existing records. In 1767 a wood frame meeting house was erected at or near the intersection of two roads and somewhere close to the locus. The town was incorporated in 1775, a Congregational Church and Society having been organized about 1770, with the Reverend Eliphalet Steel as first ordained minister and clerk, which positions he held until his dismissal in 1794. The Church ceased to exist in 1814 after various difficulties but was reorganized in 1816. By a deed in 1772, Robert Joyner "for and in Consideration of the Esteem Love Good Will and Affection which I bear and bear towards My loving Friend Revnd. Pastor and Worthy Teacher Mr. Eliphalet Steel of Egremont afforesaid Clerk" granted "to the said Mr. Steel his Heirs and Assigns forever" a certain parcel of land *356 containing five acres, bounds of which began at a heap of stones on the north side of the Meeting House in Egremont, "To Have and to Hold ... unto the said Mr. Steel his Heirs & Assigns from henceforth as his and their own Right of Inheritance forever without any Manner of Condition whatsoever." The description of the land was based upon references to boundary marks which cannot now be identified, thus making present location of the site impossible. Eliphalet Steel was found by the master to have taken title to the land as an individual and not in any representative capacity. There is no record of any subsequent deed from him to the town of the land conveyed to him by Robert Joyner nor any record of the town's otherwise acquiring title to this five acre parcel, wherever it might be.
A small enclosed cemetery, one half acre in size, was established sometime prior to 1800, somewhat northerly of the intersection of the two town roads. The first reference to the cemetery in the chain of record title to the locus appeared in a warranty deed from Octavius Joyner to his son, Seymour Joyner, in 1825, which deed conveyed certain land, including the locus. Expressly reserved from the land conveyed by that deed and at its southwest corner was the burying ground "agreeable to a lease ... executed to Andrew Bacon Plynna Karner Samuel Newman and others the 11th November AD 1816." The lease, which was to representatives of the Egremont Church, was never recorded at the registry of deeds and has disappeared. In 1865 Seymour Joyner conveyed to the town the burial ground, described as containing "seventy two Square rods of Ground ... excepting and reserving however from the said premises a portion of the same Eighteen feet wide extending from the Southerly to the Northerly line thereof for a place of burial: and also reserving the fruit trees growing upon all the above premises, and the aforesaid town shall by virtue of these premises keep at its own expense the premises inclosed with a proper and appropriate fence." A deed in 1869 from the heirs of Seymour Joyner conveyed to one Baldwin the land which Joyner had owned *357 "reserving the burying ground." The premises originally owned by Joyner were then conveyed in a number of successive deeds all but two of which made no mention of the cemetery. Finally in January, 1957, the premises were conveyed to the plaintiffs as tenants by the entirety. The plaintiffs first received notice in 1959 of the claim of the town to the land adjoining the cemetery enclosure but "took no legal action until after town officials began work on said land in 1962." In May of that year the plaintiffs found one of the selectmen excavating and grading with a bulldozer on the land immediately south of the enclosed cemetery. He had been hired as a contractor by the cemetery commissioners to do the work at town expense. The commissioners have caused a gravel roadway from a town road nearby to be built around three sides of the cemetery enclosure. Stakes and posts have been set in the ground and other work has been done by the town.
It is claimed that the 1772 deed from Robert Joyner to Eliphalet Steel included the half acre burial lot and the locus for a total of five acres, and that the land thus conveyed passed to Steel in his capacity as minister, not as an individual. It is further contended that it is upon the land conveyed to the minister in 1772 that the burial ground was established sometime prior to 1800, and that following the incorporation of the town in 1775 certain parish functions passed to the secular authorities and that title to the burial ground, including the locus, held by the minister of the Church passed to the town.[1]
1. The evidence adduced before the master is not reported. Hence the facts found by him are conclusive unless on their face they are mutually inconsistent or plainly wrong. Anagnosti v. Almy, 252 Mass. 492, 500. Goodman v. Goldman, 265 Mass. 85, 88. Rule 90 of the Superior Court (1954).
2. The master found the exact location of the premises conveyed by the 1772 deed to be unknown. That deed referred *358 to the Meeting House, a heap of stones, a stake and stones, and a tree, in other words monuments likely to disappear. See Clark, Law of Surveying and Boundaries (3d ed.) § 45.
The master further found that Eliphalet Steel took title to the land described therein, wherever it may have been, as an individual and not in any representative capacity. His finding in this regard is supported by the language employed to establish consideration and by the habendum clause. We are not inclined to accept the contention of the defendants that Eliphalet Steel took as the minister of the Church, thus as a corporation sole, or that the land subsequently passed from him as land held by him for the Church. See G.L.c. 68, §§ 5 and 7; Weston v. Hunt, 2 Mass. 500; First Parish in Brunswick v. Dunning, 7 Mass. 445; Overseers of the Poor of Boston v. Sears, 22 Pick. 122. There is thus no error in the finding that the town never acquired title to the cemetery or the locus through Steel.
3. For the plaintiffs it is clear that, at least after 1816, the Joyners claimed the area of both the present cemetery and the locus; the deed from Octavius Joyner to Seymour Joyner in 1825 refers to the burial ground in a portion of his premises as land which he had previously leased to individuals holding office in the Congregational Church and Society in Egremont. This 1825 deed was followed by an 1865 quitclaim deed from Seymour Joyner to the town of his interest in the fenced cemetery but reserving certain rights in that burial ground for himself. The 1865 quitclaim indicates not only that Seymour Joyner asserted title to the cemetery and locus until that year but also that it was actually only between 1816 and 1865 that the care of the cemetery passed from the Church to the town. It would seem from the 1865 deed that the deacons of the Church did not believe that they had already acquired the title to either the fenced cemetery or the locus. The chain of title from the 1869 deed of the heirs of Seymour Joyner sufficiently indicates that the master was correct in finding that title to the locus is presently in the plaintiffs.
*359 4. The injunction issued against the cemetery commissioners was proper in view of the findings of the master relative to their control of the work at the locus. See G.L.c. 114, § 23. In the absence of evidence we are not disposed to disturb the award of damages against them. Abbot v. Waltham Watch Co. 260 Mass. 81, 96-97. There were, however, no subsidiary findings sufficient to support an injunction or damage award against the individual defendants who constituted the board of selectmen. Ducey v. Brunell, 250 Mass. 114, 117. Furthermore, the town of Egremont, which should be a principal party by reason of a claim asserted to title to the locus in its behalf, has not been joined in this suit. The case must therefore be remanded that the town may be joined as a party defendant, and for any further proceedings necessary for a determination of a possible injunction and award of damages against the town if it be found that the defendant cemetery commissioners were acting as agents of the town and not as public officers. See Thayer v. Boston, 19 Pick. 511, 515-517; Hawks v. Charlemont, 107 Mass. 414; Malinoski v. D.S. McGrath, Inc. 283 Mass. 1; Hale v. Williamstown, 292 Mass. 319; Ryder v. Lexington, 303 Mass. 281. The interlocutory and final decrees are to be modified in accordance with the foregoing.
So ordered.
NOTES
[1] Regrettably we have been afforded no help in this case by the plaintiff appellees who filed no brief.