TOWN BANK AND TRUST COMPANY *vs.* JOHN E. EATON,
administrator, & others.

Suffolk.    October 6, 1970. — December 10, 1970.

Present: SPALDING, CUTTER, KIRK, SPIEGEL, REARDON, & QUIRICO, JJ.

*Set-off. Security Interest. Equity Jurisdiction,* Suit by stakeholder.
*Equity Pleading and Practice,* Master: findings.

Facts found by a master in a suit in equity in which the evidence was
   not reported were not mutually inconsistent or plainly wrong and
   were conclusive between the parties. [349]
G. L. c. 106, § 4–208, did not give a bank, after crediting the account of
   a depositor with the amount of checks drawn on another bank on
   which the signatures of the payee had been forged by the depositor,
   any security interest in the deposited checks entitling the depository
   bank to set off against its debt to the drawee bank, which paid the
   checks, an amount remaining in such depositor's account, or render
   nugatory the depository bank's warranties to the drawee bank under
   § 4–207. [349]
Where the bill in a suit in equity sought to compel the various defendants
   to litigate among themselves claims of each relating to funds held by
   the plaintiff and alleged that it was merely a stakeholder and did not
   claim any interest therein, the plaintiff had no standing to claim an
   equitable set-off against the defendant entitled to the funds. [350]

BILL IN EQUITY filed in the Superior Court on September 26, 1966.

The suit was heard by *Goldberg,* J., on a master's report.

*Peter D. Cole* for the plaintiff.

*Francis H. Fox* for The First National Bank of Boston.

*Bernard Kaplan* for John E. Eaton, administrator.

SPALDING, J.    This litigation arose in the following cir-
cumstances.    On August 5, 1966, Town Bank and Trust
Company (Town) was named as an alleged trustee in an
action brought by Sylvia Shockett (Shockett) by her then
conservator, Louis Theran (Theran) against Charles A.
Migdal (Migdal) and his wife, Myra.    Town in its answer
stated that it had funds of the Migdals in its possession in

the amount of $3,757.45. Thereafter, Town brought this bill in equity interpleading Shockett by her conservator Theran,[1] The First National Bank of Boston (First), The Boston Mutual Life Insurance Company (Boston), and The Prudential Insurance Company of America (Prudential). The bill seeks to compel the various defendants to litigate among themselves claims of each relating to moneys held by Town. The bill alleges that Town is merely a stakeholder of the funds and that it does not claim any interest in them.

The answers and counterclaims of Shockett, Boston, Prudential and First put in issue the rights and liabilities of the parties with respect to the following. 1. Shockett seeks to recover from Boston and Prudential the proceeds of policies of insurance issued by these companies; Shockett also seeks to recover from Town the sum of $3,757.45, the balance in account No. 084–2117 standing in the name of the Migdals. 2. Boston asserts that it issued a check drawn on First payable to Shockett in the sum of $4,039.05 in payment of an insurance policy, and that if it appears that the check was paid on a forged indorsement, Boston will be liable to Shockett in this amount and First will be liable to Boston in like amount. 3. Prudential asserts that it issued a check drawn on First payable to Shockett in the amount of $3,405.56 in payment of an insurance policy, and that if it appears that the check was paid on a forged indorsement, Prudential will be liable to Shockett in this amount, and First will be liable in like amount to Prudential. 4. First claims that any unauthorized payment of the checks in question was caused by negligence or other fault of Boston and Prudential and that if it is liable to these companies it is entitled to recover the amount of such liability from Town, the plaintiff.

---

[1] A suggestion of the death of Shockett was filed on December 14, 1966, and a motion made by Theran, Shockett's executor, to defend the suit on behalf of her estate and to prosecute the counterclaim for the estate, was allowed. Subsequently a motion by John E. Eaton reciting the death of Theran and the appointment of Eaton as administrator with the will annexed of the goods not already administered of Shockett's estate, and asking that Eaton be substituted as a party for Theran, was allowed. For convenience we shall use the name Shockett in referring to her or her estate.

A master found the following facts: Shockett was a sixty-two year old paraplegic and, although mentally alert, was physically helpless and confined to bed at her home in Brookline. On July 2, 1966, her husband, Louis Shockett, died. She was the beneficiary under a life insurance policy issued by Boston and one issued by Prudential. The amount due on the Boston policy was $4,039.05; the amount due on the Prudential policy was $3,405.56.

Migdal and his wife Myra are the son-in-law and daughter, respectively, of Shockett. Shockett authorized Migdal to withdraw $1,000 from her savings account, but Migdal in fact withdrew $5,200 and wrongfully converted it, and deposited this money in an account in Town (No. 084–2117) in the names of himself and his wife. The present balance in this account is $3,757.45.

On July 11, 1966, Shockett executed proofs of claim under both policies. These were presented to the companies that same day by Migdal, pursuant to authorization conferred on him by Shockett. The following day checks were delivered by these companies to Migdal who forged upon each the mark of Shockett and deposited them in account No. 084–2117 with Town. Theran, an attorney and nephew by marriage of Shockett, was appointed her conservator on August 4, 1966. In that capacity he advised both Boston and Prudential that Shockett had neither received nor indorsed checks issued by them to her as the beneficiary under the policies and requested them to issue new checks.

On the basis of the foregoing subsidiary findings the master concluded: 1. Boston and Prudential each owed Shockett's estate the amount issued by each in payment of the policies. 2. First, as a result of making payment on forged indorsements, was liable to Boston and Prudential in the amount of the checks, neither company by negligence nor other fault having caused or contributed to the forgery or improper payment. 3. Town was liable to First for the amounts owed by First to Boston and Prudential. 4. Town owed the amount remaining in account No. 084–2117 to the estate of Shockett on the ground that the funds remaining

in the account represent the balance of the sum converted by Migdal from Shockett's savings account. Of these conclusions, only the last is challenged by Town.

Town filed exceptions to the master's report and made a motion that it be recommitted. An interlocutory decree was entered confirming the report and overruling the exceptions. A final decree was entered ordering relief in accordance with the conclusions of the master. Town appealed from both decrees.

1. Town argues that the judge erred in entering the interlocutory decree confirming the master's report. Where, as here, the evidence is not reported, the facts found by the master are conclusive unless they are mutually inconsistent or plainly wrong. *Lawrence* v. *Board of Selectmen of Egremont*, 350 Mass. 354, 357. We are of opinion that the findings were neither inconsistent nor plainly wrong, and thus they are conclusive and constitute the basis for determining the rights of the parties.

2. Town contends that G. L. c. 106, § 4–208 (Uniform Commercial Code), entitles it to set-off, as against its debt to First, the $3,757.45 remaining in account No. 084–2117. This point could well be disposed of on the ground mentioned in part 3 of this opinion where we hold that since Town has disclaimed any interest in the fund its position is that of a mere neutral stakeholder. Nevertheless, viewing the question on the merits, we are of opinion that Town cannot prevail. Town's cryptic argument relies solely on the contention that it obtained a security interest in the deposited checks when it credited Migdal's account. If any such security interest did attach to the checks, it was against the depositor, and does not impose any obligations on First, the drawee bank.

Moreover, nowhere does § 4–208 purport to place the security rights it creates in an item in such a superior position that warranties made by the depository bank to its transferees or the drawee bank (see § 4–207) are rendered nugatory. See *Universal C. I. T. Credit Corp.* v. *Guaranty Bank & Trust Co.* 161 F. Supp. 790, 794 (D. Mass.).

3. Town argues finally that allowing Shockett's estate to recover the full $3,757.45 remaining in account No. 084–2117 would result in unjust enrichment since $1,637.24 of that sum was spent for the benefit of Shockett, and therefore the court below should have decreed an equitable set-off in this amount. We lay to one side the fact that Town's contention is scarcely more than a bald assertion which can hardly be called argument. See *Lolos* v. *Berlin*, 338 Mass. 10. S. J. C. Rule 1:13. 351 Mass. 738. The short answer is that Town has no standing to present this issue. By its bill it disclaimed any right to the funds and therefore must be taken as standing in the neutral position of a stakeholder. As a stakeholder it cannot be heard to object to findings as to the respective rights of the defendants or to its liability to pay the funds in its hands to the prevailing party. *Barnett* v. *Riceman*, 294 Mass. 148, 151. Moreover, there are no findings in the master's report that support the claim that Shockett would be unjustly enriched. Nowhere in the report is there any finding that the sum of $1,637.34 was spent for her benefit.

> *Interlocutory decree affirmed.*
> *Final decree affirmed with costs*
> *of appeal.*