*Southern District*
No. 62224

## MASSACHUSETTS BANK & TRUST CO.

v.

## JOSEPH McGILLICUDDY, a/k/a JOSEPH J. McGILLICUDDY

Argued: April 14, 1971. Decided: July 28, 1971.

*Present:* Murphy, P.J., Covett, Rider, JJ.
Case tried to *Sullivan, J.* in the District Court of Northern Norfolk, No. 62224.

**Murphy, P.J.** This is an action of contract in three counts wherein the plaintiff is seeking to

recover from the defendant the sum of $7,500.00 on a check dated September 10, 1969, drawn by the defendant on the South Shore National Bank, payable to Kemp Trans. & Storage, Inc. (Kemp) and endorsed "FOR DEPOSIT ONLY TO THE CREDIT OF KEMP TRANS. & STORAGE, INC." and deposited by Kemp in its payroll checking account with the plaintiff. The answer is a general denial, plea of payment, and failure of consideration.

The trial court found for the defendant.

**At the trial there was evidence tending to show the following**: Kemp maintained two checking accounts with the plaintiff, one a regular checking account number 014-819-9 and the other a payroll checking account number 014-834-2. Both checking accounts had been overdrawn from time to time.

The defendant's father-in-law held the controlling interest in Kemp.

In June 1969, the defendant commenced employment by Kemp. On September 10, 1969, the defendant and his father-in-law discussed an agreement by the terms of which the defendant was to acquire a 25% stock interest in Kemp for the sum of $7,500.00, subject to certain terms and conditions. It was understood and agreed by the defendant and his father-in-law that the $7,500.00 capital investment by the defendant would be paid directly to Kemp and not to the defendant's father-in-law. The defendant delivered to his father-in-law on September 10,

1969 a check dated September 10, 1969, drawn by the defendant on the South Shore National Bank, payable to Kemp Trans. & Storage, Inc. in the amount of $7,500.00, and requested his father-in-law to hold the check until their agreement was put in writing and the said terms and conditions were satisfied. The defendant further informed his father-in-law that after the agreement was in writing and all terms and conditions were satisfied, he woud deposit in his checking account sufficient funds for the clearance of the $7,500.00 check.

On *September 10, 1969,* Kemp's payroll checking account number 014-834-2 with the plaintiff was overdrawn $3,959.53 and its regular checking account number 014-819-9 was overdrawn $3,092.99.

Notwithstanding the instructions he received to hold the check, the defendant's father-in-law on *September 10, 1969* on behalf of Kemp went to the plaintiff bank and made two deposits in the payroll checking account number 014-834-2, respectively, of $3,218.24 and $7,579.00, the latter including the check in suit.

At the time of the receipt of the $7,500.00 check for deposit by Kemp, the plaintiff bank was unaware of the agreement between the defendant and his father-in-law, nor did it know of any infirmity in the check.

It was the practice of the plaintiff bank to extend credit to Kemp in either checking account by honoring checks drawn by Kemp for

which there were no funds on deposit, or uncollected items in process. Prior overdrafts of Kemp exceeded $6,000.00.

After the two deposits, respectively, of $3,-218.24 and $7,579.00, and before notice of dishonor of the check for $7,500.00, the plaintiff bank on September 10, 1969, by bookkeeping entries, reduced the overdrawn balance of the payroll checking account number 014-834-2, and paid three checks of Kemp's drawn on its payroll checking account totalling $4,460.00, which were deposited by Kemp in its regular checking account number 014-819-9, and were credited to the said regular account. The plaintiff, also prior to any notice of dishonor of the $7,500.00 check, paid checks drawn on Kemp's payroll checking account number 014-834-2 totalling $925.29, and on its regular checking account totalling $1,240.23.

On *September 10, 1969,* the plaintiff bank put the check for $7,500.00 through the Federal Reserve Bank and started the collection process.

On *September 11, 1969,* the defendant informed his father-in-law that the terms and conditions of their agreement could not be met, and therefore, he did not want to acquire 25% of the stock of Kemp, and demanded the return of his check for $7,500.00. The defendant's father-in-law informed the defendant he needed the said check and deposited it in the payroll checking account of Kemp with the plaintiff bank.

On *September 12, 1969,* the plaintiff bank received notice of dishonor of the check for $7,500.00 because of insufficient funds and immediately thereafter the plaintiff bank ceased to honor any checks drawn against the checking accounts of Kemp.

The check was never paid to the plaintiff bank.

The plaintiff duly filed fifteen requests for rulings; all but number 15 were allowed without comment or allowed with the comment "allowed — but not so found." Requests numbers 4 and 5 were allowed with a more detailed explanation.

The court found the following facts:

"In the above entitled action I find for the defendant."

"The Court finds and rules that:

(a) On September 10, the plaintiff-bank took the $7,500.00 check in good faith and without notice of its dishonor or any defense against it; and that on September 12, the bank received notice of dishonor, upon which it ceased to honor any checks drawn against the accounts.

(b) The defendant had a good defense against payee-depositor Kemp.

(c) The plaintiff-bank took the check without giving any thing of value for it.

(d) The value of the bank's security interest in the check is zero.

(e) The ledger credit extended to Kemp by the bank for the $7,500.00 deposit was not drawn upon by Kemp.

"The bank maintained two checking accounts with its customer, Kemp Trans. & Storage, Inc. One of these accounts was identified by the word 'Payroll.' Kemp drew checks upon the payroll account for purposes other than payroll — with the bank having knowledge thereof; and the bank interchanged debits and credits between the two accounts on its own volition. For the purpose of determining if the bank took the check for value, the Court finds that the two accounts are as one.

"Soon after depositing (with a 'For deposit only to the credit of' endorsement) into the payroll account, Kemp transferred $4,460.00 to its other account. Both accounts were overdrawn at the time. The bank gave nothing of value by virtue of this bookkeeping transaction.

"On the day of the $7,500.00 deposit, but preceding it, Kemp made a valid deposit of $3,218.24. The total amount of checks paid out by the bank following these deposits was $2,165.52 ($925.29 of which was drawn on the payroll account). In that credit was first given to the $3,218.24, nothing was withdrawn from the later credit of $7,500.00.

"The Court further finds that the bank did not rely upon the $7,500.00 uncollected deposit when it was subsequently honoring the checks totalling $2,165.52. It was a practice of the bank

to extend credit to Kemp by honoring Kemp checks for which there were no funds, with prior overdraws having exceeded $6,000.00.''

The court made no other findings of fact. The court found for the defendant.

The plaintiff claims to be aggrieved by the rulings of the court: that the plaintiff-bank took the check for $7,500.00 without giving anything of value for it; that the value of the plaintiff-bank's security in the check is zero; that the allowance of plaintiff's requests for rulings numbered 4 and 5 and specific findings pertaining thereto were inconsistent with the findings of fact of the court, and by the court's rulings and findings for the defendant.

Counsel for both the plaintiff and the defendant have filed very informative and helpful briefs.

The primary question is whether or not the plaintiff-bank is ''a holder in due course'' of the $7,500.00 check. If it is not, then it took the instrument, subject to the defense that the check was ''conditionally delivered'' to the payee Kemp, and that condition not having been satisfied, the defendant therefore had a good defense against Kemp [and so has that defense against the plaintiff].

Under the Uniform Commercial Code, G.L. c. 106, a holder in due course is defined as ''a holder who takes the instrument for value (§ 3-302 (1) (a)), in good faith (§ 3-302 (1) (b)), and without notice that it is overdue or has been

dishonored or of any defense against or claim to it on the part of any person. (§ 3-302 (1) (c))."

The trial court found that the plaintiff bank took the defendant's check in good faith and without notice of the defendant's valid defense against Kemp, and the defendant does not argue this point. The substantial question then is, whether value was given by the plaintiff-bank.

A bank gives value for the purpose of determining its status as a holder in due course "to the extent that it has a security interest in an item." Section 4-209. A bank has a security interest in an item

"(a) in the case of an item deposited in an account to the extent to which credit given for the item has been withdrawn or applied;

(b) in the case of an item for which it has given credit available for withdrawal as a matter of right, to the extent of the credit given whether or not the credit is drawn upon and whether or not there is a right of charge-back; or

(c) if it makes an advance on or against the item." § 4-208 (1)

The trial judge found that the various transactions of the plaintiff bank did not meet any of the requirements enumerated in § 4-208 (1), and he specifically found that the ledger credit extended to Kemp by the plaintiff bank for the

$7,500.00 deposit was not drawn upon by Kemp and was only a provisional credit at best, that no advance was made, and that the item was later charged back. This finding is decisive on the question of whether the bank gave value or not. *Boston-Continental National Bank* v. *Hub Fruit Co.,* 285 Mass. 187 and see G.L. c. 106, § 4-208(1).

When this $7,500.00 check was dishonored, the bank immediately charged it back to Kemp's account. The judge found the ledger credit was merely a provisional bookkeeping entry and the bank gave nothing of value thereby. Counsel for the defendant, while agreeing with the judge, contends further that the bank, by charging it back, has elected to hold Kemp responsible and that it cannot now sue the maker of the check. This contention would seem to have a lot of merit, and the position of the bank, is to say the least, inconsistent, if not irreconcilable. G.L. c. 106, § 4-212. However, we do not pursue that point any further, since we feel the entire record supports the finding that the depositor intended the $7,500.00 entry to be merely provisional and this intent is buttressed by statutory presumption. There was no evidence that the plaintiff relied upon this $7,500.00 in extending credit to its depositor. Furthermore, there was evidence that the plaintiff had extended its depositor up to $6,000.00 in credit without any security whatsoever on previous occasions. The trial judge found as a fact that the plaintiff did

not rely upon the $7,500.00 uncollected deposit when honoring checks received after the deposit.

Findings of fact by a trial judge will not be disturbed by this court if they can be supported on any reasonable view of the evidence with all the rational inferences of which they are susceptible, unless such findings are plainly wrong. *Moss* v. *Old Colony Trust Co.,* 246 Mass. 139. *Barttro* v. *Watertown Square Theatre, Inc.,* 309 Mass. 223. *DiIeso* v. *Bellino,* 338 Mass. 801. Applying this rule to the present case before us, we cannot say this finding is plainly wrong; there is ample evidence in the record to support it.

Since there was no withdrawal made on the $7,500.00 deposit, the only other possible contention of the plaintiff is that, since the bank made a bookkeeping entry to an overdrawn account for a deposited item, the bank had a security interest in the deposited item under § 4-208 (1) (a). We do not agree with this contention.

The trial judge found that the plaintiff bank in crediting Kemp's checking account only made a provisional bookkeeping entry of credit on its records, conditioned upon the $7,500.00 check being good with full intention of striking the credit, if the check was not good. The mere crediting of a depositor's account by a collecting bank does not constitute the giving of value and thus create a security interest in the depos-

ited item. § 4-208; § 4-209 and see also *Merchants National Bank* v. *Marden, Orth and Hastings Company,* 234 Mass. 161 at page 164-170.

The fact that Kemp's checking accounts were overdrawn at the time of deposit does not change this general rule. Doubtless, such overdrafts being antecedent debts could supply the "value" essential to make the collecting bank a holder in due course if the checks, uncollected had been taken in payment of such "antecedent debts." *Bowling Green, Inc.* v. *State Street Bank and Trust Co.,* 307 F. Supp. 648, 654, (D.C. Mass. 1969) aff'd. 425 F2d 81 (1st Cir. 1970). The court found in that case that the defendant and Bowl-Mor had entered into a "security agreement" which gave the defendant a floating lien on Bowl-Mor's chattel paper. Since the item in question was part of the proceeds of a Bowl-Mor contract, the court concluded the defendant had given "value." This is not the case here, and the judge so found.

The substantial question is still one of fact, and that is to determine whether the credit given was to discharge the overdraft regardless of final settlement, or whether the credit was conditioned upon final settlement. *Northside Bank of Tampa* v. *Investors Acceptance Corporation,* 278 F. Supp. 191, 192 (W.D. Pennsylvania 1968), where the court refused to grant summary judgment in favor of the plaintiff bank because "the elements constituting a

holder in due course are questions of fact for the triers of fact to determine." *Boston-Continental National Bank* v. *Hub Fruit Co.*, 285 Mass. 187 and see *Universal C.I.T. Credit Corp.* v. *Guaranty Bank & Trust Co.*, 161 F. Supp. 790.

It would appear something further must be done, and a mere transfer on the books of the bank from one overdrawn account to another is not sufficient to establish the giving of value and thus create a security interest under G.L. c. 106, § 3-302 (1). The cases relied upon by the plaintiff are clearly distinguishable from the instant case. In *Bowling Green, Inc.* v. *State Street Bank and Trust Co.*, 307 F. Supp. 648, the bank gave value for the full amount of the check at the time it accepted the deposit. The court ruled it had acquired a security interest in the item, where bank and depositor had entered security agreement which gave the bank a floating lien on depositor's chattel paper, and check was part of proceeds of a conditional sales contract under which depositor sold merchandise, and one of bank's prior loans to depositor had been made in expectation that this particular check would be deposited. G.L. c. 106 §§ 1-201 (37), 3-303, 4-208, 4-208 (1) (c).

In *Banco Espanol de Credito* v. *State Street Bank & Trust Co.*, 409 F2d 711 (1st Cir. 1969), cied by the plaintiff, the court ruled a "security interest" had been established where the bank in question had credited amounts specified in letters of credit against debts owed it by manu-

facturers. This is not the factual situation in the case before us by any stretch of the imagination.

In *Waltham Citizens National Bank* v. *Flett,* 353 Mass. 696, (which is cited several times by the plaintiff as authority for the proposition that the bank is a holder in due course) the bank liquidated a note due it at the time the deposit was made. This is clearly distinguishable from the facts in the present case.

To sum it up, the trial judge found that the $7,500.00 credit was not a final discharge of the overdraft but rather the discharge was "conditioned upon the check being good." This conclusion is amply warranted since there was no evidence tending to show that the bank might apply to the overdraft on its books any credit other than a final one after collection. Nor was there any evidence of any course of dealings between the plaintiff bank and Kemp in a like situation, indicating a contrary procedure. The fact that the plaintiff bank immediately charged-back Kemp's checking account upon notice of dishonor supports the conclusion that the credit given was conditional upon a final settlement of the $7,500.00 check. Therefore, since the credit given was provisional and was in fact revoked, the plaintiff bank did not give value when it credited Kemp's overdrawn checking account.

The judge made ample findings to justify his action on all of plaintiff's requests for rulings,

including number 15, which was denied. The requests were for the most part correct statements of fact, or law, which are immaterial or become inapplicable because of the findings made by the judge; therefore, we do not set all of them out in detail here.

Request numbers 4 and 5 read as follows:

"4. On the evidence introduced by the plaintiff, the Court is warranted in finding that when Kemp Trans. & Storage, Inc. deposited the check declared upon with the plaintiff-bank, the payroll checking account of Kemp Trans. & Storage, Inc. was overdrawn in the amount of $3959.53.

"5. On the evidence introduced by the plaintiff, the Court is warranted in finding that after Kemp Trans. & Storage, Inc. deposited the check declared upon with the plaintiff-bank, the plaintiff-bank applied a credit to the payroll checking account of Kemp Trans. & Storage, Inc. in the amount of the said check, discharging the overdraft appearing thereon."

The judge allowed request number 4 with the comment, "Allowed — but not so found. The Court finds that at that time the balance of the payroll account was overdrawn in the amount of $741.29."

As to number 5, it was allowed with the comment, "Allowed — but it is not found that the

over-draft was discharged. The Court finds that the plaintiff-bank made a provisional bookkeeping entry of credit on its records conditioned upon the check being good — with full intention of striking the credit if the check was not good.''

The plaintiff contends the allowance of these requests is inconsistent with the judge's findings. We fail to see any inconsistency. However, if there is, the proper remedy was by a motion to the trial judge to correct the inconsistency. It is too late now to raise that point. *Kelsey* v. *Hampton Court Hotel Co.*, 327 Mass. 150. *Cook* v. *Kozlowski*, 351 Mass. 708. *John F. O'Connor* v. *Dorothy W. Lamothe*, 38 Mass. App. Dec. page 163. *John F. O'Connor* v. *American Casualty Co.*, 38 Mass. App. Dec. page 175.

There being no prejudicial error, **an order should be entered dismissing the report.**

MARCUS E. COHN AND JOSEPH R. GRASSIA
both of Boston for the plaintiff.
MICHAEL H. RUDY
of Boston for the defendant.